UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
PALWINDER SINGH, on his own behalf and on behalf
of others similarly situated,

                               Plaintiff,

                v.

ANMOL FOOD MART, INC. d/b/a Anmol Food Mart
Inc, d/b/a Sunoco; DIAMOND FOOD MART, INC.,
d/b/a Diamond Food Mart Inc, d/b/a Conoco; and
VISHAL KUMAR,

                          Defendants.
------------------------------------------------------------------X

**REPORT &
RECOMMENDATION**

22-CV-5475
(Reyes, J.)
(Marutollo, M.J.)

**JOSEPH A. MARUTOLLO, United States Magistrate Judge:**

On September 13, 2022, Plaintiff Palwinder Singh commenced this action against Defendants Anmol Food Mart, Inc., d/b/a Anmol Food Mart Inc, d/b/a Sunoco, ("Anmol"); Diamond Food Mart, Inc., d/b/a Diamond Food Mart Inc, d/b/a Conoco ("Diamond"); and Anmol and Diamond's owner, Vishal Kumar ("Kumar") (together, "Defendants"), alleging wage and hour claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the New York Labor Law ("NYLL"), N.Y. Lab. L. §§ 190 *et seq.*, 650 *et seq.*  Dkt. No 1 ¶ 1.

Specifically, Plaintiff alleges claims against Defendants under the FLSA for: (1) unpaid wages; (2) unpaid overtime wages; (3) liquidated damages; and/or (4) attorneys' fees and costs. *Id.* ¶ 2.  Plaintiff also alleges claims against Defendants under the NYLL for: (1) unpaid wages and unpaid minimum wages; (2) unpaid overtime wages; (3) unpaid spread of time wages; (4) liquidated damages; (5) statutory damages for failure to provide wage statements with each payment of wages; (6) statutory damages for failure to provide a time of hire notice; (7) pre-judgment and post-judgement interest; and (8) reasonable attorneys' fees and costs.  *Id.* ¶ 3.

On August 6, 2024, the parties reached a settlement in principle.  *See* August 6, 2024 Text Order.  On October 25, 2024, the parties filed a joint letter-motion requesting that the Court approve the parties' settlement agreement ("Settlement Agreement") as fair and reasonable under *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015).  *See* Dkt. No. 74 ("the Joint Motion").  The Court held a fairness hearing on November 21, 2024.  November 21, 2024 Text Order.  At the hearing, Plaintiff was directed to provide supplemental briefing on its request for attorneys' fees.  *Id*.  Plaintiff filed the Court-ordered supplemental briefing on November 23, 2024.  *See* Dkt. Nos. 76-77.  On February 3, 2025, the Court requested from Plaintiff's counsel further evidence of attorneys' fees and costs, which was provided the same day.  *See* February 3, 2025 Text Order; Dkt. No 78.

Currently pending before this Court, on a referral from the Honorable Ramon E. Reyes, Jr., United States District Judge, is the Joint Motion.  *See* Dkt. No. 74; October 30, 2024 Text Order.  For the reasons set forth below, this Court respectfully recommends that the Joint Motion be granted.

## I.    <u>Relevant Background</u>

On September 13, 2022, Plaintiff commenced this action against Defendants, alleging wage and hour claims under the FLSA and the NYLL.  *See, e.g.,* Dkt. No 1.

Specifically, Plaintiff alleges that he worked as a gas station attendant from July 29, 2021 to approximately August 29, 2021, at Anmol and Diamond, which were owned by Kumar.  *Id*. ¶¶ 7, 14.  Plaintiff states that he regularly worked from 8:00 a.m. to 8:00 p.m. for seven days a week, for a total of 84 hours per week.  *Id*. ¶ 28.  Plaintiff alleges he "was paid [] compensation of fourteen dollars ($14) per hour for all hours worked up to forty (40) and then twelve dollars ($12) per hour

for all hours worked above forty (40)." *Id.* ¶ 31.  Plaintiff further states that the first 40 hours were paid by check, while the remaining hours after 40 were paid in cash.  *Id.* ¶ 32.

Plaintiff alleges that from July 26, 2021 to August 8, 2021, he was paid $888.98 for the first 40 hours of his work, but only received $432.00 in cash for the remaining hours he worked beyond 40, though he was entitled to $1,104.00.  *Id.* ¶ 33.  Plaintiff states he was never paid for this work, and thus is owed back pay for this period of $762.00.  *Id.* ¶ 34.

Plaintiff also alleges he was never paid for the last week of his employment for Defendants, from August 23, 2021 to August 29, 2021.  *Id.* ¶ 35.

Moreover, while he was employed by Defendants, Plaintiff alleges that his base pay amounted to less than New York's minimum wage, that he did not receive compensation to which he was entitled for hours worked over forty per week, and that his "base and additional compensation [] did not include an extra hour's pay for each day he worked a spread of time greater than ten (10) hours."  *Id.* ¶¶ 36-38.

Plaintiff further claims that Defendants failed to provide him with a wage statement or paychecks containing sufficient information, including pay period dates, Plaintiff's name, the employer's name, address, and telephone number, "[his] regular and overtime rates of pay and the bases thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; [his] gross wages; any deductions from [his] wages; any allowances claimed as part of the minimum wage; and [his] net wages."  *Id.* ¶ 39.  Nor did Defendants allegedly display the labor law notice posters required by Section 516.4 of Title 29 of the Code of Federal Regulations or Section 142-2.8 of the Wage Order.  *Id.* ¶ 26.

Plaintiff served Defendants Anmol and Diamond on December 5, 2022, and Defendant Kumar on December 7, 2022.  *See* Dkt. Nos. 9-11.  On January 17, 2023, Defendants appeared

through counsel, and on January 20, 2023, filed a motion for an extension of time to respond to the complaint, which was granted. *See* Dkt. Nos. 13, 15; January 22, 2023 Text Order. Defendants answered on February 10, 2023. Dkt. No. 17.

On February 21, 2023, the Court referred this case to mediation, to be completed by June 1, 2023. *See* Dkt. No. 18. On July 17, 2023, the mediation was reported as unsettled. July 17, 2023 Text Order.

Subsequently, Plaintiff served on Defendants his motion for conditional collective class certification on September 14, 2023, to which Plaintiff responded on October 20, 2023. Dkt. Nos. 26, 29. Plaintiff replied on November 1, 2023. Dkt. No. 29.

On January 26, 2024 the Court entered a memorandum and order that partially granted Plaintiff's motion to "conditionally certify as a collection action, distribute notice to the putative collective, and to proceed with discovery to determine whether the case may continue as a class action under Rule 23." Dkt. No. 35. Defendants were given 14 days to produce to certain discovery to Plaintiff, 30 days (or 36 days from entry of the Order, whichever was sooner) after which Plaintiff was to disseminate Notice of the collective action, with certain restrictions. *Id.*

On March 14, 2024, the Court granted Defendants' counsel's motion to withdraw as attorney. March 14, 2024 Text Order. Thereafter, Defendant Kumar attempted to appear *pro se* on behalf of Anmol and Diamond, which the Court did not permit. *See* March 20, 2024 Text Order. The Court on March 20, 2024 directed the Plaintiff to state whether it would seek a default judgment against the Defendants Anmol and Diamond, who were then unrepresented and thus could not appear in the action. *See id.*

On April 8, 2024, Plaintiff filed a letter motion to strike Defendants Anmol and Diamond's answer, as well as a status report indicating Defendant Kumar had failed to comply with his

4

discovery obligations. *See* Dkt. No. 43. In that letter, Plaintiff also sought leave to request a Certificate of Default against the corporate defendants. *Id*. The Court granted in part and denied in part this motion, ordered Plaintiff to take steps to move for a default judgment against the corporate defendants, and ordered Defendant Kumar to comply with Plaintiff's discovery requests, among other things. *See* April 8, 2025 Text Order. The Clerk of Court entered a notation of default against Defendants Anmol and Diamond on April 23, 2024. Dkt. No. 46.

Defendants Kumar, Anmol, and Diamond thereafter failed to appear at status conferences and to otherwise comply with the Court's orders. *See* May 22, 2024 Text Order. Plaintiff subsequently moved for a default judgment and for attorneys' fees against Defendants Anmol and Diamond. Dkt. Nos. 52-57.

On May 23, 2024, counsel appeared for Defendants Kumar, Anmol, and Diamond and responded to the Court's prior order to show cause as to why Kumar failed to appear at a status conference. Dkt. Nos. 58, 60. Plaintiff later withdrew his motion for default judgement, *see* Dkt. No. 52, as well as Plaintiff's counsel's motion for attorneys' fees, *see* Dkt. No. 55. May 30, 2024 and May 31, 2024 Text Orders.

On August 6, 2024, the parties reached a settlement in principle during a settlement conference held before the undersigned. *See* August 6, 2024 Text Order. Following the settlement in principle, the parties filed further litigation with the Court regarding the "fine print" of the Settlement Agreement. *See* Dkt. Nos. 70, 73. The undersigned held a second settlement conference on October 16, 2024. *See* October 16, 2024 Text Order. At that second settlement conference, the parties addressed all outstanding issues and reiterated the settlement in principle. *See id.*

On October 25, 2024, Plaintiff filed the Joint Motion, requesting that the Court approve the parties' Settlement Agreement as fair and reasonable. *See* Dkt. No. 74. The Settlement Agreement, among other things, entails a $40,000.00 payment to Plaintiff, inclusive of Plaintiff's legal fees and costs. Dkt. No. 74 § II. Specifically, Plaintiff will receive $15,000.00 of a total possible damages award of $15,355.04 (representing about 98% of the total recoverable compensatory and liquidated damages, and inclusive of prejudgment interest and statutory damages). *Id.* §§ II-III; Dkt. No. 76 ¶ 8. Under the settlement, Plaintiff's attorneys, Troy Law, PLLC (the "Firm"), will receive $25,000.00. The Firm's attorneys' fees lodestar, which is a calculation of a reasonable hourly rate multiplied by the hours worked, was $59,785.83, and its costs lodestar $891.08, for a total lodestar amount of $60,676.91. *See id.* ¶ 13. Based on further billing records provided to the Court on February 3, 2025, the total estimated fees accrued by Plaintiff's counsel amounted to either $67,675.50 or $67,676.00 and the costs accrued were approximately $902.68. *See* Dkt. Nos. 74-4 at 11, 78-1 at (v)(i), 78-2 at 6.

The Court held a fairness hearing on November 21, 2024. November 21, 2024 Text Order. At the hearing, Plaintiff was directed to provide supplemental briefing on Plaintiff's counsel's request for attorneys' fees. *Id.* Plaintiff filed such supplemental briefing on November 23, 2024. *See* Dkt. No. 76-77. On February 3, 2025, the Court requested from Plaintiff's counsel further evidence of attorneys' fees and costs, which was provided the same day. *See* February 3, 2025 Text Order, Dkt. No 78.

## II.    <u>Legal Standard</u>

In *Cheeks v. Freeport Pancake House, Inc.*, the Second Circuit "held that parties cannot privately settle FLSA claims with a stipulated dismissal with prejudice under Federal Rule of Civil

Procedure 41 absent the approval of the district court or the [United States] Department of Labor." *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 599 (2d Cir. 2020).

In deciding whether to approve an FLSA settlement, "[a] reviewing court must ensure that the proposed agreement between the plaintiff and the defendant reflects a reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching." *Yunganaula v. D.P. Grp. Gen. Contractors/Devs. Inc.*, No. 21-CV-2015 (CBA) (MMH), 2023 WL 2707024, at *2 (E.D.N.Y. Mar. 30, 2023) (quoting *Li v. HLY Chinese Cuisine Inc.*, 596 F. Supp. 3d 439, 445 (E.D.N.Y. 2022)); *see also Intal v. Erie Agustin, M.D. Primary Care, P.C.*, No. 18-CV-03196 (SJ) (JRC), 2022 WL 892084, at *2 (E.D.N.Y. Jan. 27, 2022), *report and recommendation adopted*, 2022 WL 889041 (E.D.N.Y. Mar. 25, 2022) ("In considering whether to approve an FLSA settlement, courts consider whether the agreement reflects a reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching." (quotations and citation omitted)).

"Where, as here, the parties seek approval from the district court, they must establish that the settlement is 'fair and reasonable.'" *Guerrero v. Jerome Meat & Produce Corp.*, No. 23-CV-3878 (AT), 2025 WL 104376, at *1 (S.D.N.Y. Jan. 15, 2025) (citations omitted).  Courts generally consider the following non-exclusive list of factors to determine whether a settlement is fair and reasonable:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

*Fisher*, 948 F.3d at 600 (2d Cir. 2020) (quoting *Wolinsky v. Scholastic, Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012)); *see also Jun Cui v. O2 Korean BBQ*, No. 19-CV-2794 (DLI) (SJB), 2020 WL 7034369, at *4 (E.D.N.Y. Feb. 11, 2020).

> Conversely, the following factors can weigh against approving a settlement:
>
> (1) the presence of other employees situated similarly to the claimant; (2) a likelihood that the claimant's circumstance will recur; (3) a history of FLSA non-compliance by the same employer or others in the same industry or geographic region; and (4) the desirability of a mature record and a pointed determination of the governing factual or legal issue to further the development of the law either in general or in an industry or in a workplace.

*Li*, 596 F. Supp. 3d at 445 (citations omitted). "Even if an application of the *Wolinsky* Factors demonstrates that the agreement is reasonable, the court must also consider whether the settlement complies with the Second Circuit's admonitions as articulated in *Cheeks*." *McPherson v. Look Ent. Ltd.*, No. 23-CV-04273 (JMA) (JMW), 2025 WL 43165, at *3 (E.D.N.Y. Jan. 7, 2025) (internal citations omitted). "Courts should guard against 'highly restrictive confidentiality provisions,' overbroad releases that 'would waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues,' and 'a[ny] provision that would set the fee for plaintiff's attorney . . . without adequate documentation.'" *McPherson*, 2025 WL 43165, at *3 (citing *Cheeks*, 796 F.3d at 206).

"In addition, if attorneys' fees and costs are provided for in the settlement, district courts will also evaluate the reasonableness of the fees and costs." *Fisher*, 948 F.3d at 600. In requesting attorneys' fees and costs, "[t]he fee applicant must submit adequate documentation supporting the [request]." *Id.*; *see also Wolinsky*, 900 F. Supp. 2d at 336 (explaining that to enable the Court to evaluate the reasonableness of the proposed fees, counsel must submit evidence supporting their requested fees including, for example, billing records). At bottom, courts must ensure "that any

attorney's fees provided for in the agreement are reasonable." *McPherson*, 2025 WL 43165, at *3 (citing 29 U.S.C. § 216(b)).

"When a district court concludes that a proposed settlement in a FLSA case is unreasonable in whole or in part, it cannot simply rewrite the agreement, but it must instead reject the agreement or provide the parties an opportunity to revise it." *Fisher*, 948 F.3d at 597.

## III.   Discussion

### A.   Settlement Terms

This Court finds the terms of the Settlement Agreement fair and reasonable. The Settlement Agreement "does not include the typical provisions that preclude approval, including (1) overbroad releases; (2) highly restrictive confidentiality provisions; (3) non-disparagement provisions that bar truthful statements; and (4) prohibitions on future employment." *Li*, 596 F. Supp. 3d at 450. Indeed, the release in the Settlement Agreement is appropriately limited to the wage-and-hour claims asserted in the complaint, and there is no confidentiality provision, non-disparagement clause, or a prohibition on future employment. *See* Dkt. No. 74-1.

The Settlement Agreement states that Defendants will remit to Plaintiff the settlement amount in three roughly equal installments, the first of which is due to Plaintiff within one month of this Court's approval of the settlement agreement. *Id.* § 2. The remaining two installments will be paid within two and three months of this Court's approval of the settlement agreement, respectively. *Id.* The installments will be delivered to Plaintiff's counsel, and will be comprised of three checks: (i) a bank check payable to Plaintiff's counsel for attorneys' fees and costs; (ii) a bank check payable to Plaintiff, for which Defendant shall issue a form 1099; and (iii) a bank check payable to Plaintiff for gross wages, with lawful tax withholdings and deductions, for which Defendant shall issue a form W-2. *Id.* This payment plan is fair and reasonable. *See, e.g., Intal*,

2022 WL 892084, at *2 (approving, in an FLSA case, a proposal "to settle the case for a total of $50,000.00 paid in equal installments over 18 months"); *Grijalba v. Metro Rite Laundromat, Inc.*, No. 20-CV-3398 (LB), 2021 WL 8316291, at *2 (E.D.N.Y. Oct. 7, 2021) (approving an FLSA settlement whereby the defendants paid a lump sum upon court approval and "the remainder of the settlement in $1,000 monthly installments for the following twenty months."); *Perechu v. Flaum Appetizing Corp.*, No. 18-CV-1085 (SJB), 2021 WL 9564384, at *3 (E.D.N.Y. Dec. 17, 2021) (approving a settlement in an FLSA case whereby payment was to be made in two equal installments: "the first being thirty (30) days after the Effective Date and the second being no later than six (6) months after the date the first installment is made or October 1, 2022, whichever date is earlier.").

Defendants also agreed to execute a Confession of Judgment for $80,000.00 (twice the settlement amount), less payments made under the Settlement Agreement, which are to be dissolved and destroyed upon remittance of the last payment installment. *See* Dkt. No. 74-1 § 3.

Accordingly, upon review of the Settlement Agreement as a whole, this Court respectfully recommends finding the settlement terms fair and reasonable.

### B. Settlement Amount

The parties propose a total settlement amount of $40,000.00. *See* Dkt. No. 74 § II. As explained above, of that amount, Plaintiff would receive $15,000.00 and his attorneys would receive $25,000.00 for their attorneys' fees and costs. *Id.* § III.

The $15,000 settlement amount is approximately 98% of Plaintiff's total possible recovery, which is well above the acceptable range for this circuit. *See Guerra v. Bunny Deli Inc.*, No. 22-CV-3498 (VSB), 2023 WL 4706129, at *2 (S.D.N.Y. July 24, 2023) (approving settlement that was 39% of total possible recovery); *Li*, 596 F. Supp. 3d at 448 (approving settlement amount of

10

13.8% of alleged damages and collecting cases approving amounts ranging from 12.5% to 19% of the alleged maximum recovery); *Santos v. YMY Mgmt. Corp.*, No. 20-cv-1992 (JPC), 2021 WL 431451, at *1 (S.D.N.Y. Feb. 8, 2021) (approving settlement where the plaintiff's recovery was "approximately 18% of Plaintiff's total alleged damages and approximately 39% of his total alleged minimum wage and overtime owed," and noting that "[c]ourts in this District routinely award settlement amounts within this range.").

In reaching this settlement, Plaintiff recognizes the risks of proceeding with litigation, including the expense of proceeding to trial, "increased litigation costs, use of judicial resources, and [the] extensive delay of [a] resolution." Dkt. No. 74 § II(A). Indeed, Defendants contend that Plaintiff is not entitled to recover compensatory damages under both the FSLA and the NYLL, and that Plaintiff is thus double-calculating. *Id*. § II(B). Moreover, Defendants contend that Plaintiff is not entitled to liquidated damages under both the FLSA and NYLL. *Id.* Accordingly, this settlement amount is reasonable in light of anticipated expenses to be incurred by the parties. *See Santos*, 2021 WL 431451, at *1 (noting that a factor weighing in favor of a finding of reasonableness is "the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses.")

The Court also recognizes that the Settlement Agreement was the product of arm's-length negotiations between experienced counsel; the $15,000 award for Plaintiff was overseen at a settlement conference held before the undersigned. *See* Dkt. No. 74 § II. "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement." *Meigel v. Flowers of the World, NYC, Inc.*, No. 11-CV-465 (KBF), 2012 WL 70324, at *1 (S.D.N.Y. Jan. 9, 2012) (quoting *Johnson v. Brennan*, No. 10-CV-

4712 (CM), 2011 WL 4357376, at *12 (S.D.N.Y. Sept. 16, 2011)).  Additionally, the parties' negotiations were contentious, as evidenced by the unsuccessful mediation before an Eastern District of New York-designated mediator on May 18, 2023.  *See* Dkt. No. 21; *see also* July 17, 2023 Text Order.  This Court therefore has no doubt that "the proposed settlement reflects a reasonable compromise over contested issues." *Meigel*, 2012 WL 70324, at *1 (quotations and citation omitted).

Finally, there is nothing to suggest that the proposed settlement is tainted by "fraud or collusion." *Wolinsky*, 900 F. Supp. 2d at 335.  Although the FLSA places "strict limits on an employee's ability to waive claims for fear that employers would otherwise coerce employees into settlement and waiver," *Wolinsky*, 900 F. Supp. 2d at 335 (cleaned up), these concerns are not as relevant because Plaintiff no longer works for Defendants, *see, e.g., Lopez v. Poko-St. Ann L.P.*, 176 F. Supp. 3d 340, 344 (S.D.N.Y. 2016) (noting that plaintiffs are "no longer employees of the defendants," which "reduc[es] the danger that the release was obtained through improper job-related pressure").

Given the disputed damages calculations issues, the stage of the proceedings, where the parties have conducted discovery, and the risks inherent in litigation, this Court respectfully recommends a finding that Plaintiff's recovery under the Settlement Agreement is fair and reasonable, and is within the possible range of recovery.

### C.    Attorneys' Fees and Costs

According to the Settlement Agreement, of the total settlement amount of $40,000.00, $25,000.00 would go to the Firm to cover attorneys' fees and costs.  Dkt. No. 74 § III; *see also* Dkt. No. 74-1 § 1.  The costs, initially represented as amounting to $891.08, then later clarified to be $902.68, include filing fees, fees for effectuating service on Defendants, and fees associated

with mediating the dispute before Mediator Robert Kheel.  *See* Dkt. Nos. 74, 74-4 at 11, 78 at 8. "Courts often award costs that are 'incidental and necessary to plaintiff's representation.'" *Morales v. City Scrap Metal, Inc.*, No. 19-CV-6682 (CLP), 2022 WL 20539979, at *5 (E.D.N.Y. Nov. 16, 2022) (cleaned up).

Plaintiff's damages award was negotiated first and independently of Plaintiff's attorneys' fees.  *See* Dkt. No. 76 ¶¶ 8-10.  During the August 6, 2024 settlement conference, the parties reached a settlement in principle, after negotiating Plaintiff's damages in the amount of $15,000. *Id*.  ¶¶ 6-8.  Subsequently, the parties negotiated the global resolution of $40,000 comprised of $15,000 for Plaintiff and $25,000 for the attorneys' fees, inclusive of costs, as an alternative to having Plaintiff proceed with making a fee application to the Court.  *Id*. ¶¶ 10-11.

"Courts must assess the reasonableness of plaintiff's attorneys' fees, regardless of whether the fee has been negotiated as part of the settlement amount."  *Morales*, 2022 WL 20539979, at *5 (cleaned up).  Courts consider the following six factors when assessing the reasonableness of attorneys' fees in FLSA settlements: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation[]; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations."  *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000); *see also Cruz Guerrero v. Montefiore Health Sys. Inc.*, No. 22-CV-9194 (KHP), 2025 WL 100889, at *11 (S.D.N.Y. Jan. 15, 2025) (noting that "[r]easonableness is the touchstone of attorneys' fee award approval," via applying the *Goldberger* factors) (citations omitted).

In calculating attorneys' fees, courts have used one of two methods: the "lodestar" method and the "percentage-of-recovery" method.  *See Allen v. Taylor*, 795 Fed. App'x 79, 80 (2d Cir. 2020).  When using the "lodestar" method, courts multiply the number of hours reasonably spent

by counsel on the matter by a reasonable hourly rate. *See Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 546, 551-52 (2010); *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011); *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections*, 522 F.3d 182, 183 (2d Cir. 2008).  "While there is a strong presumption that this amount represents a reasonable fee, it may be adjusted upward or downward based on other considerations." *Cowan v. Ernest Codelia, P.C.*, No. 98-CV-5548 (JGK), 2001 WL 30501, at *7 (S.D.N.Y. Jan. 12, 2001), *aff'd sub nom. Cowan v. Codelia*, 50 F. App'x 36 (2d Cir. 2002) (quoting *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999)).  Indeed, "courts in this Circuit have applied a multiplier to the lodestar calculation." *Morales*, 2022 WL 20539979, at *5 (collecting cases).

Instead of using the lodestar method, courts may also employ the "percentage of the fund" method. *See McDaniel v. County of Schenectady*, 595 F.3d 411, 417-18 (2d Cir. 2010) (collecting cases).  With this method, courts in this Circuit have routinely found an award representing one-third of the settlement amount to be reasonable. *See Romero v. Westbury Jeep Chrysler Dodge*, No. 15-cv-4145 (ADS) (SIL), 2016 WL 1369389, at *2 (E.D.N.Y. Apr. 6, 2016) (collecting cases).  "However, a one-third percentage may be 'simply too great' in relation to the work performed." *Morales*, 2022 WL 20539979, at *5 (quoting *Larrea v. FPC Coffees Realty Co.*, No. 15-CV-1515 (RA), 2017 WL 1857246, at *6 (S.D.N.Y. May 5, 2017)).  "In FLSA cases, regardless of the method used, "[t]he Court must . . . separately assess the reasonableness of plaintiffs' attorney's fees, even when the fee is negotiated as part of a settlement rather than judicially determined." *Id.* (quotations and citation omitted).

i.       **Hourly Rates**

Here, the proposed hourly rates sought by the lawyers of the Firm are unreasonably high. *See, e.g., Guo v. Tommy's Sushi, Inc.*, No. 14-CV-3964 (PAE), 2016 WL 452319, at *5 (S.D.N.Y. Feb. 5, 2016) ("The billing rates requested for most of the timekeepers at [the Firm] exceed the rates generally awarded in this [d]istrict.").

Plaintiff retained the Firm in connection with this action. *See* Dkt. No. 76 ¶ 22. The Firm was founded in 1989 by principal attorney John Troy, who represented Plaintiff since the inception of this suit, and who has been practicing law since 1985 and focuses primarily on wage-and-hour cases. *Id.* ¶¶ 26-27. The Firm submitted detailed contemporaneous time records, which include appropriate entries regarding the nature of each task and the time spent on its completion. Dkt. Nos. 74-4, 76 § I.A, 78-1, 78-2.

Overall, there were five individuals who recorded time entries on Plaintiff's matter at the Firm: attorneys John Troy, Aaron Schweitzer, and Tiffany Troy, as well as law clerks Preethi Kilaru and Gavin Dass. *See* Dkt. Nos. 74-4, 76. According to the Joint Motion, the billable rates of these individuals are as follows: (i) John Troy - $650.00/hour; (ii) Aaron Schweitzer - $400/hour for substantive work and $200/hour for travel; (iii) Tiffany Troy - $250/hour for substantive work and $150/hour for travel; (iv) Preethi Kilaru - $200/hour; and (v) Gavin Dass - $150/hour. *See id*. Moreover, these individuals billed over 190 hours litigating this case, culminating in a lodestar attorneys' fees calculation of $59,785.83, which was then indicated in the Firm's most recent filing to be approximately $67,675.50. *See* Dkt. Nos. 74 § III, 78-1 ("GRAND TOTAL: $67,675.50"), 78-1 (listing total as $67,676.00).

As an initial matter, this Court finds the rates of certain individuals at the Firm who billed time to Plaintiff's matter unreasonable. First, with respect to John Troy, "courts in both the

Southern and Eastern Districts of New York have consistently reduced [John Troy's] requested rates." *See Xiaochun Gao v. La Vie En Szechuan Restaurant Corp.*, No. 19-CV-2515 (JPC) (KHP), 2024 WL 5284057, at *10 (S.D.N.Y. Dec. 18, 2024), *report and recommendation adopted*, 2025 WL 41608 (S.D.N.Y. Jan. 7, 2025) (citing *Rodpracha v. Pongsri Thai Rest. Corp.*, No. 14-CV-02451 (DF), 2021 WL 6205861, at *3 (S.D.N.Y. Dec. 29, 2021) ("[T]his Court has . . . previously scrutinized [John Troy's] billing rates, and, in other cases, has determined that his requested rates should be reduced in light of the consistently poor quality of his work[.]")); *Wang v. XBB, Inc.*, No. 18-CV-7341 (PKC) (ST), 2023 WL 2614143, at *4 (E.D.N.Y. Mar. 23, 2023) (rejecting John Troy's request for an hourly rate of $650, and awarding a rate of $400 instead), *reconsideration denied*, 2024 WL 184263 (E.D.N.Y. Jan. 17, 2024); *De La Cruz Rosas v. Just Salad 60 Third LLC*, No. 18-CV-7342 (JGK) (BCM), 2023 WL 5423982, at *8 (S.D.N.Y. Aug. 4, 2023) (rejecting John Troy's request for $650 hourly rate, and awarding $400 instead), *report and recommendation adopted*, 2023 WL 5390985 (S.D.N.Y. Aug. 22, 2023).

John Troy does not explain why his work merits $650 per hour, except to refer to an oral ruling from a state court case in 2023, where he was purportedly awarded a rate of $650 an hour. *See* Dkt. No. 77 at 11.  Nor does John Troy address the plethora of cases awarding him a considerably lower rate.

Consistent with the case law in this Circuit, this Court finds a reasonable hourly rate for John Troy to be $400.  *See Wang*, 2023 WL 2614143, at *4 (awarding John Troy a rate of $400 an hour); *De La Cruz Rosas*, 2023 WL 5423982, at *8 (awarding John Troy a rate of $400 an hour); *cf. Guo*, 2016 WL 452319, at *5 (noting that a $300 hourly rate for John Troy was appropriate "in light of (1) rates typically commanded by similarly experienced partners in FLSA actions in this District, (2) the rates Troy himself has historically been awarded in FLSA cases in this District,

16

and (3) the Court's finding that the 'unexceptional case was within the mainstream of legal work in such cases.'") (citations omitted).

Additionally, the Court reduces the requested hourly rate of $400 to $200 for substantive work done by the Firm's associate, Aaron Schweitzer. *See Wang*, 2023 WL 2614143, at *5 (declining to award Schweizer a $400 hourly rate, but in light of "not find[ing] any flagrant errors in his work[,]" awarding him a $200 hourly rate, and not $150, as awarded in *Rodpracha*). Schweizer graduated from Fordham University School of Law in 2016 and has the title of "managing associate" of the Firm, *see* Dkt. No. 76 ¶¶ 43-44, and courts within this Circuit typically award reasonable hourly rates for senior associates ranging from $200-300. *See Hui Lo v. L & S Acupuncture*, No. 14 Civ. 1003 (BMC), 2015 WL 1954468, at *2 (E.D.N.Y. Apr. 29, 2015). Additionally, travel undertaken by Schweizer, which the Firm billed at an hourly rate of $200, is hereby reduced to $100. *See* Dkt. 78-1.

This Court also finds that the requested lodestar hourly rate of associate Tiffany Troy should be reduced from $250 for substantive work and $150 for travel, to $175 and $75, respectively. *Id.* Ms. Troy also attended Fordham University School of Law and was admitted to practice law in New York in 2021. Dkt. No. 76 ¶ 67. In this Circuit, court-approved hourly rates for junior associates for FLSA and NYLL work typically range from $125-$200. *See De La Cru v. Trejo Liquors, Inc.*, No. 16CV4382 (VSB) (DF), 2019 WL 9573763, at *18 (S.D.N.Y. Sept. 10, 2019).

Moreover, the Court reduces the requested hourly lodestar rates for the Firm's clerks, Preethi Kilaru and Gavin Dass from $200 and $100, respectively, to $75. *See Wang*, 2023 WL 2614143, at *5 ("the Court finds that $75 per hour is a reasonable rate for Kilaru's billed time").

17

### ii. Hours Worked

Here, among Mr. Troy, Mr. Schweizer, Ms. Troy, Ms. Kilaru, and Mr. Dass, the Firm billed a total of 191.26 hours. *See* Dkt. No. 78-1, at (ii). This Court finds, however, that the hours worked are excessive in light of the procedural posture of this case. Though the Firm has represented Plaintiff since March 2022, *see* Dkt. No. 76 ¶ 22, and has overseen a motion for conditional class certification, motions for default judgment, mediation, settlement conferences, and discovery disputes, *see* Dkt. No. 76 ¶ 11, many of the Firm's billing entries were inflated, duplicative, or represented an inefficient use of legal resources.

For example, and as has been noted by other courts in this Circuit, partner John Troy engaged in a substantial amount of work of a junior-associate or even administrative nature. *See Lianhua Weng v. Kung Fu Little Steamed Buns*, No. 17-CV-2273 (LAP), 2021 WL 2043399, at *2 (S.D.N.Y. May 21, 2021) ("Mr. Troy's time records 'reflect not only partner-level work, but also associate- and even paralegal-level work.'") (citing *Guo*, 2016 WL 452319, at *6). Specifically, Mr. Troy spent substantial time filing documents, including the "Complaint, Summons, and Civil Cover Sheet," a "Consent to Become Party Plaintiff," and a "Request for Issuance of Summons." *See* Dkt. No. 78-2 at 1. Mr. Troy also drafted a deposition notice (which took him .8 hours), and billed time for calendaring dates and compiling exhibits. *See id*. at 1-2.

Similarly, Mr. Schweitzer, despite his title of "managing associate," engaged in a substantial amount of administrative and paralegal-level work, including "Compil[ing] Invoice[s] in Support of [a] Default Judgment[,]" which took him nearly three hours, as well as entering employee collective action lists into the Firm's databases. *See id.* at 2, 3.

Ms. Troy also recorded some questionable billing entries. For example, the Firm's bill contains no fewer than nine of Ms. Troy's entries for "Confer Mediator RE Scheduling," which

totaled over two hours in late March and early April 2023. *See id.* at 5. Additionally, numerous of Ms. Troy's billing entries indicate she "Access[ed], Download[ed], [and] Calendar[ed]" certain documents, but it is not clear what legal work was done in connection with these entries. *Id.* at 3, 5-6.

### iii.    The Proposed Settlement

Under the lodestar method of calculation of Plaintiff's attorneys' fees, the Firm estimates its expenditure on prosecuting this lawsuit was $67,675.50. Dkt. Nos. 78-1, at (v)(i), 78-2 at 6 (listing $67,676.00). But Plaintiff appears to acknowledge that the attorneys' fees should be reduced by roughly 40%, given that, under the Settlement Agreement, the Firm will receive $25,000.00, which is a close-to-40% reduction.

Indeed, this Court, and others in this Circuit have similarly found such a reduction to be merited by the Firm's unreasonably high hours and inefficient use of legal resources. *See Wang* 2023 WL 2614143, at *7 (reducing hours billed by 40% "to account for [the Firm's] haphazard billing practices, and after considering reductions that other courts have applied in similar cases."); *Guo*, 2016 WL 452319, at *7 (reducing the Firm's hours billed by 40% due to inefficient billing); *Lu Wan v. YWL USA Inc.*, No. 18-CV-10334 (CS), 2021 WL 1905036, at *7 (S.D.N.Y. May 12, 2021) (holding that "40% of the total hours billed by John Troy, Schweitzer . . . and Kilaru should be trimmed as excessive or otherwise unnecessary"); *Jianmin Jin v. Shanghai Original, Inc.*, No. 16-CV-5633 (ARR) (JO), 2020 WL 4783399, at *8 (E.D.N.Y. Aug. 18, 2020) (implementing "40% blanket reduction in billable hours" in light of the Firm's billing practices); *see also Williams v. Epic Sec. Corp.*, 368 F. Supp. 3d 651, 656 (S.D.N.Y. 2019) ("Courts in this Circuit have recognized a district court's authority to make across-the-board percentage cuts in hours, as opposed to an item-by-item approach, to arrive at the reasonable hours expended.").

Accordingly, the Court respectfully recommends that the $25,000 in attorneys' fees and costs is reasonable here. If the Court were to apply a 40% discount to hours bills and applied the reduced lodestar rates, the sum would come to $23,995.50, as set forth below.

| Attorney | Rates | | Hours Reduced 40% | Reasonable Fees |
|---|---|---|---|---|
| J. Troy | $ | 400.00 | 32.49 | $ 12,996.00 |
| A. Schweitzer Full | $ | 200.00 | 7.37 | $ 1,474.80 |
| A. Schweitzer Travel | $ | 100.00 | 1.70 | $ 169.80 |
| T. Troy Full | $ | 175.00 | 46.38 | $ 8,116.50 |
| T. Troy Travel | $ | 75.00 | 4.90 | $ 367.65 |
| P. Kilaru | $ | 75.00 | 11.61 | $ 870.75 |
| G. Dass | $ | 75.00 | 10.30 | $ 772.65 |
| | Sum: | | 114.76 | $ 23,995.50 |

And, after incorporating lodestar costs of $902.68, the total lodestar amount of attorneys' fees and costs is $24,898.18. Accordingly, the $25,000 settlement amount requested by the Firm is reasonable.[1]

Finally, the Court adds that while the $25,000 in attorneys' fees and costs for the Firm is larger than Plaintiff's $15,000.00 recovery, in consideration of the *Goldberger* factors set forth above, the Court finds its such attorneys' fees award amount to be fair and reasonable. Dkt. No. 74 § III. Indeed, in *Fisher*, the trial court was found to have abused its discretion in rewriting a settlement agreement where the original agreement allocated counsel $23,000 in attorneys' fees and costs, and Plaintiff $2,000.00. *Fisher*, 948 F.3d at 597. "Nothing in this clause or the surrounding text supports the conclusion that a 'reasonable attorney's fee' must be a 'proportional' fee." *Id*. (quoting *United Auto. Workers Local 259 Soc. Sec. Dept. v. Metro Auto Ctr.*, 501 F.3d

---

[1] While the percentage of recovery method of calculation is largely inapplicable here, the retainer agreement between Plaintiff and Plaintiff's counsel contained a contingent fee arrangement providing that Plaintiff's counsel would receive one-third of Plaintiff's net recovery. *See* Dkt. Nos. 74 § III, 74-3 § 5. The retainer agreement also specifically allows for Plaintiff's counsel to receive any attorneys' fees awarded by the Court: "It is specifically understood that all attorney fees awarded by the court or accrued by Attorneys are and shall remain the property of the Attorney." Dkt. No. 74 § III.

283, 294 (3d Cir. 2007)); *see also Dillatoro v. D'Onofrio*, No. 16-CV-254 (DRH) (ARL), 2022 WL 2467573, at *3 (E.D.N.Y. May 25, 2022) (discussing *Fisher* and recommending approval of $27,588.75 in attorneys' fees and $1,742.27 in costs, despite $7,000.00 damages award for plaintiffs), *report and recommendation adopted*, No. 16-CV-254 (DRH) (ARL), June 23, 2022 Text Order.

The other *Goldberger* factors also weigh in favor of finding the award fair and reasonable—the risks of litigation are high, "FLSA claims typically involve complex mixed questions of fact and law," *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 743 (1981), and the public policy goal of encouraging attorneys to take on FLSA and NYLL actions that protect the wages of workers is served here, *see Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 481 (S.D.N.Y. 2013).

## IV.    <u>Conclusion</u>

Accordingly, for the reasons set forth above, this Court respectfully recommends that the Joint Motion be granted.

A copy of this Report and Recommendation is being electronically served on counsel. Any objections to this Report and Recommendation must be filed within 14 days after service of this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(a) & (d) (addressing computation of days). Any requests for an extension of time for filing objections must be directed to Judge Reyes. Failure to file objections within this period designating the particular issues to be reviewed waives the right to appeal the district court's order. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010); *Kotlyarsky v. United*

*States Dep't of Just.*, No. 22-2750, 2023 WL 7648618 (2d Cir. Nov. 15, 2023); *see also Thomas*

*v. Arn*, 474 U.S. 140 (1985).

Dated:      Brooklyn, New York
February 8, 2025

                        **SO ORDERED.**


                         */s/ Joseph A. Marutollo*    
                        JOSEPH A. MARUTOLLO
                        United States Magistrate Judge